# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **THE WEST INDIAN COMPANY LIMITED,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **YACHT HAVEN USVI, LLC,** ) <br> ) <br> **Defendant.** ) <br> ) | Case No. 3:20-cv-0011 |

**ATTORNEYS:**

**Christopher Allen Kroblin, Esq,**
**Shari Natalya D'Andrade, Esq.**
Kellerhals Ferguson Kroblin PLLC
St. Thomas, U.S.V.I.
  *For Plaintiff The West Indian Company Limited,*

**Matthew J. Duensing, Esq.**
Duensing & Casner
St. Thomas, U.S.V.I.

**Adam Brenner Gilbert, Esq.**
**Thomas Michael Mealiffe, Esq.**
Nixon Peabody LLP
New York, N.Y.
  *For Defendant Yacht Haven USVI LLC.*

## MEMORANDUM OPINION

**BEFORE THE COURT** is Defendant Yacht Haven USVI, LLC's ("Yacht Haven") motion to dismiss for failure to state a claim, or in the alternative, to stay. (ECF No. 3.) For the reasons set forth herein, the Court will grant Yacht Haven's motion to dismiss in part, deny the motion to dismiss in part, and grant the alternative relief to stay this matter pending the resolution of *Yacht Haven USVI LLC v. West Indian Co.*, Case No. 656409/2019, ECF No. 1 (N.Y. Sup. Oct. 30, 2019).

Case: 3:20-cv-00011-RAM-RM Document #: 31 Filed: 03/17/22 Page 2 of 16

*WICO v. Yacht Haven*
Case No. 3:20-cv-0011
Memorandum Opinion
Page 2 of 16

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2019, the New York Supreme Court issued a summons for the West Indian Company, Limited ("WICO") to appear and answer a suit against it. *See Yacht Haven USVI LLC v. West Indian Co.*, Case No. 656409/2019, ECF No. 1 (N.Y. Sup. Oct. 30, 2019) (hereinafter "the New York case" or "the New York proceeding"). Proof of service was filed November 12, 2019. *See id.*, Doc. No. 2. On December 4, 2019, Yacht Haven filed a five-count complaint against WICO. *See id.*, Doc. No. 4; *see also WICO v. Yacht Haven*, Case No. 3:20-cv-00011-RAM-RM, ECF No. 4-2 (D.V.I. Feb. 7, 2020). In its complaint, Yacht Haven alleges breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with prospective business relations, and violations of USVI anti-monopoly law. *See id.* at 37-43. Yacht Haven additionally seeks a permanent injunction as a fifth cause of action. *See id.* at 43. The gravamen of Yacht Haven's complaint arises from the allegation that WICO has failed to uphold its contractual obligations to affirmatively support a commercial development project undertaken by Yacht Haven adjacent to a proposed cruise ship pier on Long Bay, St. Thomas, U.S.V.I., and instead took actions for its own gain, undermining Yacht Haven's commercial viability. *See generally id.*

On December 19, 2019, WICO filed its three-count complaint in this matter in the Superior Court of the Virgin Islands. *See* ECF No. 1-2. In its complaint, WICO alleges tortious interference with contracts, tortious interference with prospective business relations, and seeking declaratory judgment. *See generally id.* The thrust of WICO's complaint is the allegation that Yacht Haven interfered with WICO's prospective relationships with cruise lines in order to force WICO to more-profitably involve Yacht Haven in the construction of a proposed cruise ship dock on Long Bay, St. Thomas, USVI. *See generally* ECF No. 1-2. WICO further seeks declaratory judgment that WICO did not breach its contractual relations with Yacht Haven, which WICO acknowledges to be the subject of the New York case. *Id.* at 10.

On January 31, 2020, this case was removed by Yacht Haven on the basis of diversity jurisdiction. *See generally* ECF No. 1. Yacht Haven's notice of removal was later amended to more specifically plead the citizenship of its members. *See* ECF No. 24. While WICO moved to remand this matter to the Superior Court on the basis of Yacht Haven's failure to plead the

citizenship of its members with sufficient specificity, *see generally* ECF No. 8, that motion was mooted by Yacht Haven's subsequent amendments. *See* ECF No. 23. WICO has not filed a second motion to remand.

On February 7, 2020, Yacht Haven filed its instant motion, seeking either dismissal for failure to state a claim or a stay until the resolution of the New York case. *See generally* ECF No. 4.

## II. LEGAL STANDARD

### a. Motion to dismiss for failure to state a claim upon which relief can be granted

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) *cert. denied*, 562 U.S. 1271 (2011).

The Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with a defendant's liability, ... stops short of the line between

possibility and plausibility of entitlement of relief." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

### b. Motion to Stay

"A United States district court has broad power to stay proceedings" as part of its obligation to manage its docket in an efficient manner. *Bechtel Corp. v. Laborer's Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976). Accordingly, "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Id.* Relevant factors courts consider in determining the propriety of a stay include "principles of comity, the adequacy of relief available in the alternative forum, promotion of judicial efficiency, the identity of the parties and issues in the two actions, the likelihood of prompt disposition in the alternative forum, the convenience of the parties, counsel, and witnesses and the possibility of prejudice of the stay is granted." *Balfour v. Gutstein*, 547 F. Supp. 147, 148 (E.D. Pa. 1982) (citing *Nigro v. Blumberg*, 373 F. Supp. 1206 (E.D. Pa. 1974)). These factors, however, are rarely weighed by an appellate court because "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ." *Landis v. North American Co.*, 299 U.S. 254, 254-55 (1936). Thus, a district court's decision to stay a matter on its docket is reviewed only for an abuse of the district court's sound discretion. *See Bechtel Corp.*, 544 F.2d at 1215 (holding that "the possibility" of relief in an alternate forum resolving the issues before the court "is sufficient justification to warrant the stay.").

### III. DISCUSSION

Yacht Haven seeks two alternate forms of relief in its motion: dismissal without leave to amend and a staying of the instant matter pending resolution of the New York case. Because the relief of staying this matter is requested in the alternative to the motion to dismiss, the Court will first address the sufficiency of WICO's complaint, then turn to the issue of whether to stay this proceeding.

**a. Motion to Dismiss**

From the outset, WICO argues several general matters. First, WICO argues that the motion to dismiss is not ripe for consideration due to WICO's then-pending motion to remand. ECF No. 9, at 3-4. However, while Yacht Haven's initial notice of removal may have been deficient, WICO failed to oppose Yacht Haven's motion to amend its notice of removal, which was granted on September 20, 2021. (ECF No. 23.) The Order granting Yacht Haven's motion to amend its notice of removal additionally found WICO's motion to remand as moot, *id.*, and WICO has not filed a subsequent motion to remand. The Court therefore rejects this argument.

WICO then notes that its complaint was initially filed in the Superior Court of the Virgin Islands, which requires a notice pleading standard rather than the plausibility inquiry demanded by *Iqbal* and *Twombly*. WICO goes on to argue that its complaint should not be evaluated under the *Iqbal/Twombly* standard, but rather under the lesser notice pleading standard, because "WICO has found no binding Virgin Islands case that holds that the heightened pleading standard applies to a complaint that originated from the local court that is governed by the notice pleading requirement." ECF No. 9, at 6. WICO is unlikely to find such a case because no Virgin Islands case is binding on the Court. To the contrary, *Erie R.R. Co. v. Tomkins*[1] and its progeny make clear that "[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). More simply, when sitting in diversity, a district court will apply the federal rules of civil procedure. *See Hanna v. Plumer*, 380 U.S. 462, 472 (1965). WICO appears aware of this, discussing the federal standard for evaluating

---

[1] 304 U.S. 64 (1938).

a motion to dismiss for failure to state a claim. *See* ECF No. 9, at 4-5. Therefore, the Court rejects this argument, and declines to apply the Virgin Islands' notice pleading standard. The Court will, however, consider the fact that WICO's complaint was filed under the Virgin Islands notice pleading standard and grant WICO permission to amend its complaint. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("Leave to amend 'shall be freely given when justice so requires.'" (quoting Fed. R. Civ. P. 15)).

Lastly, WICO argues that Yacht Haven "improperly relies on exhibits and extraneous materials to try and argue the facts are not as alleged in the Complaint." ECF No. 9, at 7. While WICO is correct in that, at this stage, WICO's well-pleaded allegations must be taken as true, the Court is certainly able to consider matters of public record that are of indisputable veracity, such as the complaint filed in the New York case and attached to Yacht Haven's motion as Exhibit 2. *See generally* ECF No. 4-2. This is especially true where WICO relies on the New York case complaint as the basis for its declaratory judgment count. *See Mayer*, 605 F.3d at 230 ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

With WICO's preliminary arguments addressed, the Court now turns to the three counts alleged in WICO's complaint: tortious interference with contracts, tortious interference with prospective business relations, and declaratory judgment. Each will be addressed in turn.

### 1. Tortious Interference with Contracts

The Supreme Court of the Virgin Islands has recently held that the elements of tortious interference with contracts requires a plaintiff to demonstrate that, "(1) the existence of a contract between the plaintiff and a third party; (2) that the defendant knew of that contract; (3) that the defendant interfered with the contract using improper means or with an improper motive; and (4) that the plaintiff was damaged as a result." *Jahleejah Love Peace v. Banco Popular de Puerto Rico*, 2021 V.I. 15, ¶18; *see also Rondon v. Caribbean Leasing & Eco Transp., Inc.*, 74 V.I. 397, 2021 VI SUPER 72, ¶32 (Super. Ct. 2021) ("the requirements for tortious interference with business relations include the same elements as

intentional interference with existing contractual relations."). Necessarily, "[t]he failure to allege the existence of a contract with which defendants have intentionally interfered is fatal to a claim of tortious interference with business relations." *Id.*

As to the first element, WICO alleges that it had "fully executed Letters of Intent with certain cruise ships for the development and furtherance of Long Bay Landing Cruise Pier." ECF No. 1-2, ¶43. Yacht Haven argues that these letters of intent do not constitute a specific contract, and thus WICO's claim fails. *See* ECF No. 4, at 12-14 (citing *Shomo v. Mugar Enterprises, Inc.*, No. CIV. 2007-154, 2009 WL 3181936, at *6 (D.V.I. Sept. 28, 2009)). However, WICO further pleads that these letters of intent included "certain contractually required obligations." ECF No. 1-2, at ¶47. WICO's argument falls short.

While WICO pleads facts that plausibly give rise to liability over a vague group of letters of intent, this is insufficient to state a claim for tortious interference with contractual relations. "In order to prevail on a claim for intentional interference with existing contractual relations, Plaintiff[] must identify a specific contract about which [Defendant] know[s], and with which [Defendant] interfered." *Donastorg v. Daily News Publ'g Co., Inc.*, 63 V.I. 196, 294 (Super. Ct. 2015). WICO argues in its opposition that the letters of intent satisfy the requirements of contract formation. *See* ECF No. 9, at 8-11. However, WICO is fixated on whether the name of the documents allow them to be treated as contracts rather than with the requirement that a contract, or letter of intent as the case may be, be specifically identified. Here, no such specific contract was identified. A vague pleading of numerous amorphous letters of intent with unspecified third parties effectively creates a moving target of liability, against which Yacht Haven would be expected to defend itself. Therefore, absent the identification of a specific contract, WICO has failed to plead facts that plausibly entitle it to relief on the first element of Count 1.

In support of the second element, Yacht Haven argues that WICO has failed to plead knowledge of a specific contract. *See* ECF No. 4, at 14-15. WICO counters that its complaint is "replete with surrounding facts and inferences that support Yacht Haven's knowledge of the Letters of Intent." ECF No. 9, at 11.

In its complaint, WICO alleges that "Yacht Haven knew of those Letters of Intent." *Id.* at ¶44. This allegation is supplemented by WICO's contention that the Letters of Intent were "highly publicized in the press." *Id.* at ¶18. In and of itself, the mere allegation that "Yacht Haven knew of those Letters of Intent" is conclusory, and rightly stricken. However, the fact that the letters were "highly publicized in the press," taken as true, creates the inference that Yacht Haven knew, or at least should have known, about the existence of the letters of intent. This is not enough, however. WICO again falls short by failing to identify a "specific contract about which [Yacht Haven] knew." *Donastorg*, 63 V.I. at 294. Therefore, WICO's complaint falls short on the second element.

As to the third element, WICO alleges that Yacht Haven interfered by "threatening lawsuits against the cruise lines that are parties to the Letters of Intent, engaging the Virgin Islands press, instituting the New York Lawsuit, and announcing that it will encroach on WICO's authority over the Long Bay Landing Cruise Pier by independently developing it without WICO's involvement." ECF No. 1-2, at ¶46.[2] Yacht Haven argues that WICO alleges no specific acts of improper interference, carefully distinguishing that there is no liability for protecting their own interests through proper means. *See* ECF No. 4, at 15-19. WICO counters that it did, in fact, allege that Yacht Haven took these actions "with wanton and willful disregard for WICO's rights and for the sole purpose of harming WICO, knowing full well that Yacht Haven could never possibly develop Long Bay Landing Cruise Pier without the assistance of WICO and the Government of the Virgin Islands." ECF No. 9, at 14 (quoting ECF No. 1-2, at ¶48) (emphasis in the original). However, this allegation, too, is merely a recitation consistent with Yacht Haven's liability.

---

[2] WICO further alleges that "Yacht Haven wrongfully induced the cruise lines that are parties to the Letters of Intent to refuse to continue to perform certain contractually required obligations." ECF No. 1-2, at ¶47. However, a complaint which pleads facts "merely consistent with a defendant's liability, … stops short of the line between possibility and plausibility of entitlement of relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). The bare allegation that Yacht Haven "wrongfully induced the cruise lines… to refuse to continue to perform certain contractually required obligations" is little more than a recitation of liability for intentional interference with contractual relations, and is therefore rightly disregarded.

Yacht Haven's interpretation is incomplete. A plaintiff in the Virgin Islands may demonstrate that interference was made either through improper means *or* with improper motive. *Donastorg*, 63 V.I. at 288. A defendant's means are improper where the conduct is "independently actionable." *Id.* at 286-87. A defendant's motive is improper where it is "not motivated by a genuine business purpose, but rather interferes with a plaintiff's contract solely for the purpose of injuring the plaintiff. . . ." *Id.* at 288. WICO pleads no actions that are independently actionable. WICO avers that Yacht Haven engaged the Virgin Islands press, but does not allege that Yacht Haven did so with false information aside from conclusory references to a "misinformation campaign and other tortious conduct." *See* ECF No. 1-2, at ¶42-46. WICO alleges that Yacht Haven filed the New York case, but does not allege that Yacht Haven did so maliciously. *Id.* at ¶46. WICO alleges that Yacht Haven "announce[d] that it will encroach on WICO's authority over the Long Bay Landing Cruise Pier by independently developing it without WICO's involvement," yet pleads no facts that indicate that such an announcement is independently actionable. *Id.* Lastly, WICO offers no facts, aside from conclusory allegations, to indicate that Yacht Haven was "solely motivated" by a desire to harm WICO. *See generally id.*

To the contrary, WICO presents exhibits attached to its complaint that indicate WICO's proposed Long Bay cruise ship dock is located over submerged lands currently leased by Yacht Haven. *See, e.g., id.* at ¶36 (refencing "EXHIBIT M"); ECF No. 2-10, at 11-12 ("'Yacht Haven Grande intended to continue with its Phase 2 marina [in that area],' Mukamal said. 'But WICO announced Long Bay Landing on our land, and spent millions of dollars of its own funds to prepare and file a coastal zone management permit application without our support and without consultation with us.'" (alterations in original)). Taking WICO's pleadings at face value and affording the same to documents attached to WICO's complaint, the Court can draw no reasonable inference that the actions Yacht Haven took were independently actionable, or that those actions were taken solely to harm WICO, rather than to protect Yacht Haven's own interests. Therefore, WICO has failed to adequately plead the third element of tortious interference with contractual relations.

As to the fourth element, WICO pleads that it has "suffered and will continue to suffer damages and irreparable harm due to Yacht Haven's tortious interference with its agreements with the cruise lines." ECF No. 1-2, at ¶50. While conclusory, WICO additionally alleges that Yacht Haven's actions "negatively impact[ed] WICO's existing Letters of Intent with the cruise lines, prospective business relations with the cruise lines, and the advancement of the Long Bay Landing Cruise Pier." *Id.* at ¶41. Therefore, the Court finds that WICO has adequately pleaded that it has been damaged.

In sum, the Court will grant Yacht Haven's motion to dismiss as to Count 1, tortious interference with contracts, because WICO has failed to plead facts which plausibly state a claim for relief on the first, second, and third elements of this count.

### 2. Tortious Interference with Prospective Business Relations

In an unpublished order denying rehearing the Supreme Court of the Virgin Islands additionally recognized the elements of tortious interference with prospective relations, requiring a plaintiff to establish: "(1) the existence of a professional business relationship that is reasonably certain to produce an economic benefit for the plaintiff; (2) intentional interference with that relationship by the defendant; (3) which the defendant accomplished through improper means or for an improper purpose, and (4) the defendant's interference damaged the plaintiff." *Jahleejah Love Peace d/b/a Natural Livity Kulch Shop & Juice Bar v. Banco Popular de Puerto Rico*, 2022 WL 374274, at *2 (V.I. Feb. 7, 2022) (citing *Rondon*, 74 V.I. 397); *see also Donastorg*, 63 V.I. at 293.[3]

As to the first element, Yacht Haven argues that WICO does not allege facts to establish an objectively reasonable probability of business with 'certain cruise lines.' *See* ECF No. 4, at

---

[3] In interpreting the elements of tortious interference with prospective business relations, as well as interpreting tortious interference with existing contracts, WICO relies heavily on this Court's opinion in *Pourzal v. Marriott Int'l, Inc.*, 305 F. Supp. 2d 544, 547 (D.V.I. 2004), applying the Restatement (Second) of Torts § 767. *See* ECF No. 9, at 12-16. The Court is puzzled as to why WICO would rely so heavily on a district court decision predicting territorial law by applying the now-constructively repealed 1 V.I.C. § 4 when both the Virgin Islands Supreme Court and the Virgin Islands Superior Court have expressly endorsed different elements. WICO performs a cursory *Banks* analysis yet fails to mention those *Banks* analyses undertaken in the decisions cited herein. *See* ECF No. 9, at 13 n.1. The Court will therefore reject WICO's interpretation of these elements as drawn from the Restatement, and instead apply Virgin Islands law as expressly stated by the Virgin Islands Supreme Court, as well as by the Virgin Islands Superior Court after performing the analyses prescribed by *Banks v. Int'l Rental & Leasing Corp.,* 55 V.I. 967 (2011) and its progeny.

21-23. WICO's counterargument is brief, simply stating that "[t]hese allegations that Yacht Haven caused the cruise lines to discontinue negotiations and proclaimed that it will unilaterally develop the new pier and their reasonable inferences, firmly establish a claim for tortious interference with a prospective business relation." ECF No. 9, at 16. As to this element, the Court finds no case law supporting a similar requirement of pleading specificity as is required in Count 1. Nor do the parties cite any case law, and the Court has independently uncovered none, regarding the requisite temporal proximity of the benefit allegedly interfered with. Thus, it appears that the bar for satisfying this element, especially at this stage, is quite low. Yacht Haven cites several cases from state and federal courts in Delaware, New York, and New Jersey, but these are immaterial to an application of Virgin Islands law. Yacht Haven further argues that "WICO does not allege any role that these unspecified 'certain cruise lines' would play in the project." ECF No. 4, at 22. However, the Court can certainly draw a reasonable inference as to what role a cruise ship operator would play in a business venture involving a cruise ship pier.

Here, WICO has alleged several letters of intent giving rise to contractual obligations between it and certain cruise lines. WICO further alleges that those letters of intent led to negotiations between WICO and those cruise lines, which were terminated when Yacht Haven filed the New York case. Therefore, taking WICO's allegations as true, the prospective relationship between WICO and those cruise lines was reasonably certain to produce an economic benefit for WICO. The first element is adequately pled.

Yacht Haven does not offer any argument regarding the second element, therefore the Court will presume Yacht Haven takes no issue with WICO pleading that Yacht Haven's interference with WICO's prospective relationship with certain cruise lines was intentional. Yacht Haven does, however, argue that WICO failed to plead facts showing that Yacht Haven undertook actions for the purpose of harming WICO, attacking the third element. *See* ECF No. 4, at 23-24. For the same reasons discussed *supra* in the third element of tortious interference with contracts, the Court agrees and finds that WICO has failed to adequately plead the third element of tortious interference with prospective business relations. Lastly,

for the same reasons discussed *supra*, the Court finds that WICO has adequately plead that it was damaged as a result of Yacht Haven's actions.

The Court will therefore grant Yacht Haven's motion to dismiss as to Count 2, finding that WICO has failed to adequately plead that Yacht Haven's interference was accomplished through improper means or improper motive.

### 3. Declaratory Judgment

As to its third cause of action, WICO seeks for the Court to "declare that [WICO] did not breach its contractual relations with Yacht Haven, or interfere with Yacht Haven's contractual relations, and to declare that WICO is not in violation of the U.S. Virgin Islands Anti-Monopoly Law." ECF No. 1-2, at ¶65. WICO specifically indicates that these declarations will "resolve the on-going dispute over the contractual relations and obligations of the parties so that the dispute may be fully and permanently resolved." *Id.* at ¶66. Specifically, the "on-going dispute" referenced is the New York case. *See id.* at ¶64.

The Declaratory Judgment Act allows that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The 'actual controversy' requirement in the Act reflects "Article III's limitation of federal courts' jurisdiction to 'Cases' and 'Controversies.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007).[4] The Supreme Court has acknowledged that it has "not draw[n] the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." *Id.* at 127. Generally, however, appropriate disputes under the Declaratory Judgment Act must "be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that [they] be 'real and substantial' and 'admi[t] of specific relied through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). "Basically, the question in each

---

[4] An appropriate action for declaratory relief can, however, in itself be a case or controversy under Article III. *Id.* at 126 (citing *Nashville, C. & St. L.R. Co. v. Wallace*, 288 U.S. 249 (1933)).

case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

Yacht Haven argues that "[d]eclaratory relief is 'by definition *prospective in nature*.'" ECF No. 4, at 25 (quoting *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2014)) (emphasis added by Yacht Haven). Thus, WICO "cannot obtain declaratory relief for past alleged wrongs." *Id.* {quoting *Capozzi v. Bledsoe*, 560 F. App'x 157, 159 (3d Cir. 2014)).

WICO counters that Yacht Haven undermines its own argument, alleging in the New York case that "WICO undertook and *continues* to undertake numerous acts that have had, as their intended purpose or as their desired effect, the undermining of the financial viability of [Yacht Haven's] project." ECF No. 9, at 17 (quoting ECF No. 4-2, ¶6) (emphasis in original). This does not, however, address the pleading of WICO's complaint in the instant case.

Yacht Haven's description of relevant case law is troublingly misleading. *CMR D.N. Corp.* does, in fact, state the language that Yacht Haven quotes. However, when read in the context of the opinion, the Third Circuit held that an action seeking declaration of unconstitutionality or injunction directed against a law that was since-amended to remove the objectionable features was moot, because the remedy of a declaration of unconstitutionality is "prospective in nature." *CMR D.N. Corp.*, 703 F.3d at 628. This case provides no support for a dispute involving parallel litigation in two courts. Similarly, the petitioner in *Capozzi* sought a declaratory judgment that he was being unjustly held in the Special Management Unit ("SMU") of USP-Lewisburg, and his action for declaratory judgment was mooted when he was transferred from the SMU before declaratory judgment was issued. *See generally Capozzi*, 560 F. App'x 157.

The sweeping generalities employed by Yacht Haven bear little relevance to the case at hand. Here, WICO's potential liability is ongoing and instantaneous, as evinced by the fact that the New York case is still pending. There is nothing in the record, much less the pleadings, to indicate that the declaratory judgment sought by WICO has been mooted. Thus, the case law cited by Yacht Haven in not applicable to the case at hand. WICO's third count

for declaratory judgment is adequately pled, and Yacht Haven's motion to dismiss will be denied as to this count.

### b. Motion to Stay

Having addressed Yacht Haven's motion to dismiss, Count 3 of WICO's complaint remains. The Court now turns to the question of whether this matter should be stayed pending resolution of the New York case. Yacht Haven argues that this matter should be stayed because the New York case "was the first filed and involves identical parties and an identical set of facts." ECF No. 4, at 26. Yacht Haven further argues that "[t]he resolution of that action will resolve all issues between the parties – including Yacht Haven's rights to protect its leasehold that is at the heart of the Long Bay Landing Project." *Id.*

WICO counters that the first filed rule is inapplicable, and "[t]he general rule, applicable here, is that parallel proceedings in state and federal courts do not disturb the jurisdiction of either court." ECF No. 9, at 18 (quoting *Mamazouzette v. Jerome*, No. Civ. 2013-0117, 2017 WL 3083628, at *5 (D.V.I. July 19, 2017) (citing *Grinder v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007); *Francis v. Bridgestone Corp.*, No. Civ. 2010-0030, 2011 WL 2710009, at *1 (D.V.I. July 12, 2011) ("The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action.")). WICO further argues that *Colorado River* abstention is not appropriate here.[5]

While a motion to stay is left to the sole discretion of the trial court, courts generally weigh several factors when deciding if a stay is appropriate. Relevant factors include "principles of comity, the adequacy of relief available in the alternative forum, promotion of judicial efficiency, the identity of the parties and issues in the two actions, the likelihood of prompt disposition in the alternative forum, the convenience of the parties, counsel, and

---

[5] *Colorado River* addresses a court's obligation to decline to exercise jurisdiction in deference to a state court proceeding where exceptional circumstances exist. *See generally Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Because the Court is not declining to exercise jurisdiction, and no party argues that it should, WICO is correct in that a *Colorado River* abstention analysis is not required here.

*WICO v. Yacht Haven*
Case No. 3:20-cv-0011
Memorandum Opinion
Page 15 of 16

witnesses and the possibility of prejudice of the stay is granted." *Balfour*, 547 F. Supp. at 148 (citing *Blumberg*, 373 F. Supp. 1206).

The comity doctrine is one of prudence. *Levin v. Com. Energy, Inc.,* 560 U.S. 413, 432 (2010). Comity is the "proper respect for state functions," and recognizes "the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 44 (1971). Because the New York case was filed first and is currently ongoing, the Court finds that principles of comity support staying this matter.

Further, the Court finds that the relief available in the New York case will fully adjudicate the dispute between the parties, which derives from the same nexus of events and operative facts as the instant case. *See Bechtel Corp.*, 544 F.2d at 1215 (holding that "the possibility" of relief in an alternate forum resolving the issues before the court "is sufficient justification to warrant the stay."). While WICO's claims are slightly different than Yacht Haven's, a positive adjudication of Yacht Haven's New York claims will necessarily require a finding as to whether Yacht Haven holds a valid lease on the submerged lands that WICO seeks to develop, which would effectively defeat WICO's claims in the instant case. There is no indication that the New York case will be adjudicated any less promptly than this matter would. And, while New York is an inconvenient forum for WICO, the Court must balance this inconvenience against Yacht Haven's. Yacht Haven is a Virgin Islands LLC, with New York citizenship through its members. Yacht Haven will bear the burden of proof in the New York case and will therefore be responsible for ensuring the attendance of the majority of witnesses in New York. Yacht Haven's primary counsel, admitted to this court *pro hac vice*, is further located in New York. Moreover, a stay in this matter strongly supports the Court's interest in judicial economy, as it conserves the Court's resources by not litigating issues that are likely to be resolved by a previously filed state court action. Lastly, the Court sees no prejudice in granting a stay of this matter because the dispute in this matter will be adjudicated during the pendency of the stay in New York.

*WICO v. Yacht Haven*
Case No. 3:20-cv-0011
Memorandum Opinion
Page 16 of 16

Having carefully weighed the relevant factors, the Court will exercise its discretion and grant Yacht Haven's motion for a stay.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Yacht Haven's motion to dismiss as to Counts 1 and 2 of WICO's complaint and deny Yacht Haven's motion to dismiss as to Count 3. The Court will further stay this matter pending resolution of the New York case, with the parties being required to file a joint update apprising the Court of the status of the New York case every 90 days, starting June 1, 2022. WICO will be given leave to amend its complaint, and Yacht Haven's deadline to answer will be tolled for as long as this matter is stayed, as the Court does not want the parties to brief motions to dismiss, if necessary, as to WICO's forthcoming amended complaint. An appropriate Order shall follow.

**Dated:** March 17, 2022                     */s/ Robert A. Molloy*
                                              **ROBERT A. MOLLOY**
                                              **Chief Judge**